1   UNITED STATES DISTRICT COURT
2   DISTRICT OF PUERTO RICO
3
4

JOHN WENOR BRESIL,

    Petitioner,                   Civil No. 15-1508 (JAF)

    v.                         (Crim. No. 12-250-1)

UNITED STATES OF AMERICA,

    Respondent.

5
6   **OPINION AND ORDER**

7   Petitioner John Wenor Bresil ("Bresil") comes before the court with a habeas

8   petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence we

9   imposed in Criminal No. 12-250-1.   (ECF Nos. 1, 8.)   For the following reasons, we

10   deny his petition.

11   **I.**

12   **Background**

13   On September 18, 2012, a jury convicted Bresil of re-entry by an aggravated felon

14   after removal or deportation, in violation of 8 U.S.C. § 1326(a)(2),(b)(2). (Crim. No. 12-

15   250-1, ECF Nos. 86, 98.)   We sentenced him to seventy-eight (78) months of

16   imprisonment followed by three years of supervised release.  (Crim. No. 12-250-1, ECF

17   No. 98.)

18   Bresil appealed our decision.  He argued that,

19   (1) the district court wrongly denied him a continuance after the
20   government announced its intention to call an expert witness only five days
21   before trial; (2) the government violated his due process rights by sinking
22   his boat after it took him into custody, preventing a conclusive

1   determination of whether it contained enough fuel to make it to St.
2   Maarten, and by deporting others found in the boat with him who would
3   have testified that the boat was traveling to St. Maarten; and (3) there was
4   insufficient evidence to support his conviction.

5

6   *U.S. v. Bresil*, 767 F.3d 124, 125 (1st Cir. 2014).   Although the First Circuit found a

7   violation of the Rules of Criminal Procedure, the Court wrote that: "we affirm because

8   that violation did not prejudice Bresil, and his other claims are without merit." *Id.*

9       Bresil filed a motion to vacate, set aside or correct his sentence under 28 U.S.C.

10   § 2255, which was docketed with the court on April 29, 2015.  (ECF No. 1.)    The

11   government opposed his petition.  (ECF No. 6.)

12                                      **II.**

13                                 **Jurisdiction**

14       Bresil is currently in federal custody, having been sentenced by this district court.

15   To file a timely motion, Bresil had one year from the date his judgment became final.  28

16   U.S.C. § 2255(f).  His judgment became final on the last day that he could have filed a

17   petition for a writ of certiorari, which was ninety days after the entry of the Court of

18   Appeals' judgment.   SUP. CT. R. 13(1); *Clay v. United States*, 537 U.S. 522 (2003).

19       The Court of Appeals entered judgment on September 25, 2014.  (Crim. No. 12-

20   250-1, ECF No. 112.)  Therefore, Bresil filed well within the time limit for a § 2255

21   petition.

22                                      **III.**

23                                **Legal Analysis**

24       In his habeas petition, Bresil argues that he received ineffective assistance of

25   counsel and that the prosecutors engaged in misconduct.  (ECF No. 1.)  For the reasons

26   set forth below, these claims lack merit.

1    **A.        Ineffective Assistance of Counsel**

2          Bresil argues that he received ineffective assistance of counsel.  To this claim,

3    Bresil must show that both: (1) the attorney's conduct "fell below an objective standard

4    of reasonableness;" and (2) there is a "reasonable probability that, but for counsel's

5    unprofessional errors, the result of the proceeding would have been different."  *Strickland*

6    *v. Wash.*, 466 U.S. 668, 668-94 (1984).  If the alleged prejudice is rejection of a plea deal,

7    a defendant must show, among other things, that "but for the ineffective advice of

8    counsel there is a reasonable probability that [ …] the defendant would have accepted the

9    plea and the prosecution would not have withdrawn it in light of intervening

10   circumstances." *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012).

11        **1.  The Proposed Plea**

12         Bresil argues that "his lawyer misadvised him regarding the benefits of accepting a

13   proposed government offer versus proceeding to trial."  (ECF. No. 1 at 4.)  Bresil says

14   that his lawyer told him he could only receive five years imprisonment if convicted, when

15   he was actually sentenced to seventy-eight months (6 ½ years).  He argues that "Have he

16   known he could have received a sentence greater than 5 years, he would have accepted

17   the government plea deal of 3 years imprisonment."  (ECF No. 1 at 4) (sic).

18         Even if Bresil's allegations were true, Bresil provided no reason why he accepted

19   the risk of five years' imprisonment, but would not have accepted the risk of six and a

20   half years' imprisonment.  However, given the proposed plea agreement, we find his

21   allegations incredible.  The proposed plea agreement, which he rejected, stated that the

22   maximum penalty for his offense was a term of imprisonment of "not more than twenty

1   (20) years."   (ECF No. 42-1).[1]   The plea bargaining was discussed in several status

2   conferences.  (Crim No. 12-250-1, ECF Nos. 118 - 120).  This claim fails.

3            2.  **Witnesses**

4        Bresil argues that he received ineffective assistance of counsel because "his

5   lawyer misadvised him that his witnesses would be available for trial which affected his

6   decision whether to plead guilty or go to trial."  (ECF No. 1 at 5.)  These witnesses were

7   deported prior to trial.  Bresil also alleges that counsel failed to subpoena witness Viliana

8   Bresil, who would have testified that they were going to St. Marteen.  Bresil argues that

9   had he known his witnesses would not be available, he would not have gone to trial.

10  (ECF No. 1 at 5-6.)

11       In his previous appeal, Bresil argued that the government deportations violated his

12  due process rights.  *U.S. v. Bresil*, 767 F.3d 124, 129.  The First Circuit decided that there

13  was not a reasonable likelihood that the testimony of those passengers could have

14  affected the outcome of the trial.  *Id.* at 131.  Given this, we find it unlikely that the

15  witness' absence would have changed Bresil's decision to stand trial. *See Lafler v.*

16  *Cooper*, 132 S.Ct. 1376, 1385 (2012).

17       **3.  Failure to Hire an Expert**

18       Bresil argues that his counsel was ineffective for failure to hire an expert prior to

19  trial.  (ECF No. 1 at 7.)  He argues that he "was prejudice because its a possibility that an

20  expert can testify that the boat could have possible make it to St. Marteen."  (ECF No. 1

21  at 7) (sic).  Bresil already appealed the short notice he was given to hire an expert

22  witness.  The First Circuit held that no expert could have testified to the facts Bresil

---

[1] This document is stricken from the record because it was not signed by both parties.  However, because it is still available, we use it as evidence of the petitioner's mindset and knowledge at the time of plea bargaining.

1    wanted and that, moreover, it was highly improbable that challenging the underlying

2    factual assumptions would have mattered, because "there is no claim that lesser estimates

3    on the margins would have made a material difference," since "one would need to

4    increase the boat's fuel efficiency six-fold to make it plausible that the boat had enough

5    fuel to make it to St. Maarten." *U.S. v. Bresil*, 767 F.3d at 128.  Because of this, Bresil

6    cannot meet the second prong of the test for ineffective assistance, namely that there is a

7    "reasonable probability that, but for counsel's unprofessional errors, the result of the

8    proceeding would have been different." *Strickland v. Wash.*, 466 U.S. at 694.  This claim

9    fails.

10           **4.   Failure to Object to Police Uniforms**

11           Bresil argues that his counsel was ineffective for failing to "object to Mr. Bresil

12    being denied a fair trial base on the officers wearing police uniforms." (ECF No. 1-1 at

13    7) (sic). Other circuits have upheld verdicts obtained after police witnesses testified in

14    uniform. *See Jones v. Ralls*, 187 F.3d 848 (8th Cir. 1999); *see also Holbrook v. Flynn*,

15    106 S. Ct. 1340 (1986) (holding that the defendant was not denied his right to a fair trial

16    when four uniformed state troopers sat in the front row of the courtroom).  This claim

17    also fails.

18           **5.   Jury Selection**

19           Bresil also argues that he received ineffective assistance of counsel due to counsel

20    "withdrawing his/her objection and did very little challenges base on petitioner was

21    denied of a sixth amendment to a fair trial by jury of his peers where a white racial jury

22    selection was panel." (ECF No. 1-1 at 7) (sic)  A defendant's Fourteenth Amendment

23    equal protection rights can be violated by invidious racial discrimination in the jury

Civil No. 15-1508 (JAF)                                                          -6-

1    selection, and the test is laid out in *Batson v. Kentucky*, 476 U.S. 79 (1986).  The *Batson*

2    framework involves three steps:

> 3    First, the defendant must make a prima facie showing of discrimination in
> 4    the prosecutor's launching of the strike.  If the defendant fulfills this
> 5    requirement by establishing, say, a prima facie case of racially driven
> 6    impetus, then the prosecutor must proffer a race-neutral explanation for
> 7    having challenged the juror.  If the prosecutor complies, then, at the third
> 8    and final stage, the district court must decide whether the defendant has
> 9    carried the ultimate burden of proving that the strike constituted purposeful
> 10   discrimination on the basis of race.
>
> 11

12   *U.S. v. Girouard*, 521 F.3d 110, 113 (1st Cir. 2008) (internal citations omitted).

13   In this case, a bench conference was held after jury *voire dire* concluded.  Bresil's

14   counsel raised a *Batson* challenge, but withdrew it upon realizing that it lacked grounds.

15   The record reflects the following discussion:

> 16   MR. RIVERA-RIVERA:  With all due respect to sister counsel, in addition
> 17   to – I know that she was not looking backwards while she was doing her
> 18   work, but there are only three black people in the group.  And two of them
> 19   were eliminated.  So we have an objection.
>
> 20
>
> 21   THE COURT:  Well, wait a minute.  Wait a minute.  Give me the jury list.
> 22   Your colleague basically did no challenges.  She hardly did any challenges.
> 23   Look at this.  Three challenges.
>
> 24
>
> 25   MR. RIVERA-RIVERA:  All right.  Well, then I withdraw my objections.
>
> 26
>
> 27   THE COURT:  It's sheer luck that it happened that way.  And you cannot
> 28   accuse her of doing anything wrong, because she hardly executed any
> 29   challenges.
>
> 30
>
> 31   MR. RIVERA-RIVERA:  No, I know she was not doing anything wrong.

32   (Crim. No. 12-250-1, ECF No. 107 at 3.)  Thus, this ineffective assistance claim fails for

33   two reasons.  First, counsel did in fact raise an objection before us, and we made a ruling

34   based upon that objection.  Second, the record reflects that the challenge was without

35   merit.  *See id.*  Therefore, there is not a "reasonable probability that, but for counsel's

1    unprofessional errors, the result of the proceeding would have been different" had

2    counsel pushed this objection.  *Strickland v. Wash.*, 466 U.S. 668, 668-94 (1984).  The

3    claim fails.

4    **B.    Prosecutor Misconduct**

5        Bresil argues that the "prosecutor failed to perform its duty under rule 16(a)(1)(G)

6    to give timely notice of tis intent to call an expert who marshall evidence on the issue in

7    service of the government case prior to the government's notice."  (ECF No. 1 at 8) (sic).

8    This claim was already raised in Bresil's appeal and rejected by the First Circuit.  *U.S. v.*

9    *Bresil*, 767 F.3d at 126-128.  The First Circuit held that this was "an instance of foul, but

10   no harm."  *Id.* at 128.  When an issue has been disposed of on direct appeal, it will not be

11   reviewed again through a § 2255 motion.  *Singleton v. United States*, 26 F.3d 233, 240

12   (1st Cir. 1994) (internal citations omitted).

13                                              **IV.**

14                              **Certificate of Appealability**
15
16       In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever

17   issuing a denial of § 2255 relief we must concurrently determine whether to issue a

18   certificate of appealability ("COA").  In this respect, we state that it has become common

19   practice to collaterally challenge federal convictions in federal court by raising arguments

20   of dubious merit.  This practice is overburdening federal district courts to the point of

21   having some of these criminal cases re-litigated on § 2255 grounds.  We look at this

22   matter with respect to the rights of litigants, but also must protect the integrity of the

23   system against meritless allegations.  *See Davis v. U.S.*, 417 U.S. 333, 346 (1974) (in a

24   motion to vacate judgment under §2255, the claimed error of law must be a fundamental

25   defect which inherently results in a complete miscarriage of justice); *see also Dirring v.*

1   *U.S.*, 370 F.2d 862 (1st Cir. 1967) (§ 2255 is a remedy available when some basic

2   fundamental right is denied—not as vehicle for routine review for defendant who is

3   dissatisfied with his sentence).

4         We grant a COA only upon "a substantial showing of the denial of a constitutional

5   right." 28 U.S.C. § 2253(c)(2).  To make this showing, "[t]he petitioner must demonstrate

6   that reasonable jurists would find the district court's assessment of the constitutional

7   claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting

8   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  While Bresil has not yet requested a

9   COA, we see no way in which a reasonable jurist could find our assessment of his

10  constitutional claims debatable or wrong.  Bresil may request a COA directly from the

11  First Circuit, pursuant to Rule of Appellate Procedure 22.

12                                              **V.**

13                                       <u>**Conclusion**</u>

14        For the foregoing reasons, we hereby **DENY** Petitioner's § 2255 motion (ECF

15  Nos. 1, 8).  Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, summary

16  dismissal is in order because it plainly appears from the record that Petitioner is not

17  entitled to § 2255 relief from this court.

18        **IT IS SO ORDERED.**

19        San Juan, Puerto Rico, this 12th day of August, 2015.

20                                              <u>S/José Antonio Fusté</u>
21                                              JOSE ANTONIO FUSTE
22                                              U. S. DISTRICT JUDGE